**In re PRAIRIE CENTRAL RAILWAY CO., Debtor.**

**Bankruptcy No. 85 B 05350.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 9, 1988.

**954**

Groupe & Katz, Chicago, Ill., for debtor Prairie Cent. Ry.

Stephen J. Schlegel, Ivar R. Azeris, Clausen Miller Gorman Caffrey & Witous P.C., Chicago, Ill., for trustee Stephen J. Schlegel.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

One of the most unpleasant judicial duties which bankruptcy judges are called to perform involves reviewing fee applications submitted by professionals. The facts and circumstances of this case, as discussed below, and 11 U.S.C. §§ 326 and 330, mandate reduction of the compensation sought by the Trustee and the attorneys for the Trustee and only partial reimbursement of the expenses advanced.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain the application for interim compensation pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. The application constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## BACKGROUND AND SUMMARY OF APPLICATION

On April 13, 1988, the Trustee in bankruptcy Stephen J. Schlegel and Schlegel and Ivar R. Azeris of the law firm of Clausen Miller Gorman Caffrey & Witous, P.C., as attorneys for the Trustee filed an application for interim compensation under 11 U.S.C. § 331 for the period from the Trustee's appointment in May 1986 through October 31, 1987. The application together with the voluminous supporting exhibits sought a total of $36,584.00 in Trustee's fees based on hourly rates for Schlegel and three other individuals who expended in excess of 400 hours of time on trustee work. The application requested attorneys' fees totaling $24,214.00 for time expended by Schlegel and others at various hourly rates for time exceeding 230 hours. The application also sought compensation for paralegals totaling $13,213.00 for over 293 hours of time expended. Total professional fees sought were $74,010.00, less a $5,000.00 allowance received in November 1986, for a balance of $69,010.00. The application also sought reimbursement of costs advanced and incurred totaling $4,307.92 for long distance telephone charges, photocopying costs, messenger and witness expenses, records costs, postage, LEXIS and Westlaw research costs and document production costs. The initial portion of the application was a twenty-one page narrative summarizing the Trustee's efforts to sell the property of the debtor.

Applicants' summary of receipts and disbursements of the debtor's estate, Exhibit E, showed total receipts for the period covered by the application of $302,979.73 which included $169,599.78 of bank account proceeds from the debtor's bank accounts that were closed out and transferred to the Trustee upon his appointment. The balance of the receipts, or $133,379.95, were proceeds received from the sale of the debtor's railroad right of way, insurance proceeds, interest earned, proceeds from the sale of personal property and other smaller items. The Trustee's total disbursements for the period equaled $44,744.91 leaving a balance on hand in the Trustee's bank ac-

counts as of December 31, 1987 in the amount of $258,234.82.

Exhibit G to the application showed debtor's right of way acreage totaled 311.28 acres to be sold during the course of administration. Through March of 1988, 72 percent of the available acreage had been sold with 28 percent yet to be liquidated. The debtor previously operated as a short-line railroad between the cities of Lawrenceville and Mt. Carmel in southeastern Illinois covering a right of way approximately 25 miles in length with a general width of 100 feet. Debtor ceased operating in May 1984 and thereafter the trackage along the line was removed. The debtor initially filed for relief in the Southern District of Illinois but that case was dismissed and refiled in this Court as a Chapter 11 reorganization on April 25, 1985. Thereafter, debtor operated as a debtor in possession until appointment of the applicant Trustee.

## OBJECTIONS TO THE APPLICATION

The Creditors' Committee filed objections on May 4, 1988, claiming that the interim fee requests should be denied completely. The objections first raised the failure to comply with recent precedents of both the District and Bankruptcy Courts for the Northern District of Illinois concerning the format of the application. The application failed to group the separate activities performed under separate headings for each item of work performed and contained some improperly "lumped" items. Secondly, the objections asserted that the fees sought were excessive. Specifically, the Creditors' Committee was unsatisfied with the efforts performed by the Trustee and the Trustee's attorneys. No local area agents in Southern Illinois were utilized to liquidate the right of way and other assets sold to date. The Trustee and his counsel tried to "run" the liquidation efforts from Chicago using unsatisfactory appraisals and never properly advertised or followed any particular sales plan. The objections asserted substantial inefficiencies in the efforts to sell the real property. The Creditors' Committee also sought leave to inspect the underlying records and work product of the Trustee and urged that the application be resubmitted or revised as to format to allow it to more specifically "deal with each category of charges in a more specific way."

## APPLICANTS' RESPONSE TO THE OBJECTIONS

The Trustee filed a memorandum on May 5, 1988, regarding his application contending that the format requirements established in recent precedents adopted by this Court and the District Court for the Northern District of Illinois were met by the instant application. The response acknowledged that 11 U.S.C. § 326(a) imposes a statutory limitation on the maximum compensation of a Trustee by which the Court is bound. The Trustee's response virtually conceded the fact that the itemized Trustee's work performed by the Trustee and others for which hourly rate compensation was sought clearly exceeded the statutory maximum limitations imposed by 11 U.S.C. § 326(a).

## THE HEARING ON THE APPLICATION AND OBJECTIONS

 Notice was sent out to all creditors in accordance with Fed.R.Bankr.P. 2002(a)(7) of the hearing on the application and the objections thereto. The hearing was held on May 11, 1988. By minute order dated that date as a result of the objections, leave was given the Trustee to file a supplement or amendment to the application on or before May 25, 1988. Leave was given the Creditors' Committee and the United States Trustee to file a response to any supplement to the application on or before June 8, 1988, with further order to be entered by this Court after said date. To date, neither the Trustee nor his counsel have filed any amendment or supplement. The Court, therefore, will pass upon the application in its present form without further hearing. The Court lacks time to consider any tardy or late filed amendments or supplements given the press of the Court's calendar. The Trustee

has been afforded the opportunity to amend the application but has not exercised such in a timely fashion.

### 11 U.S.C. §§ 326(a) AND 330

The principal controlling statutory authorities are 11 U.S.C. §§ 326(a) and 330(a)(1) and (2) which provide as follows:

*Limitation on compensation of trustee.*
(a) In a case under Chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, and three percent on any amount in excess of $3,000 upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a).

*Compensation of officers.*
(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1) and (2).

The ultimate issue to be reached is the question of the extent, value, necessity and reasonableness of the work performed for which compensation is sought by the Trust-ee and the attorneys and paralegals for the Trustee in this case. The Bankruptcy Court has wide discretion in reviewing fee applications. *Matter of U.S. Golf Corp.,* 639 F.2d 1197, 1201 (5th Cir.1981).

In addition to the above statutory provisions contained in the Bankruptcy Code itself, this Court has adopted as general guidelines the following precedents on professional fee applications:

*In re Continental Illinois Securities Litigation,* 572 F.Supp. 931 (1983);

*In re Wildman,* 72 B.R. 700 (Bankr.N.D. Ill.1987);

*In re Pettibone Corp.,* 74 B.R. 293 (Bankr.N.D.Ill.1987);

*Cristancho v. National Broadcasting Company, Inc.,* 117 F.R.D. 609 (N.D.Ill. 1987);

*In re Wiedau's Inc.,* 78 B.R. 904 (Bankr. S.D.Ill.1987); and

*Matter of Ryan,* 82 B.R. 929 (Bankr.N.D. Ill.1988).

The foregoing case holdings and extensive dicta contained therein setting the standards for fee applications need not be repeated here at length. Reference to all these authorities has been posted outside this Judge's Courtroom as a notice to all professionals seeking compensation and expense reimbursement. All trustees, attorneys and other professionals have been on notice and applicants should have referred to these controlling precedents for purposes of preparation and submission of fee and expense applications for the case at bar.

### TRUSTEE'S FEES

██ Under the portion of the fee application relating to the Trustee's work, as noted above, in excess of 400 hours of time was itemized for four individuals' activity in a thirty-nine page Exhibit A attached to and made a part of the application. The Trustee seeks compensation for his work as Trustee at the rate of $100.00 per hour for 35.3 hours expended but also seeks compensation for three other individuals at hourly rates ranging from $85.00 to $100.00 per hour for the balance of the

hours and time expended relating to trustee's work, for a total compensation for the Trustee of $36,584.00. Reasonable interim compensation can be allowed notwithstanding the literal language of Section 326(a) requiring that the trustee receive compensation only *after* disbursement. *See In re Tom Carter Enterprises*, 49 B.R. 243, 245 (Bank.C.D.Cal.1985).

■ Although it is informative to the Court to review the itemization contained in Exhibit A, the aggregate hourly rate compensation sought for the Trustee's work in this case is not allowable under the plain and simple percentage limits of Section 326(a). In addition, the time of others assisting the Trustee is not billable or compensable thereunder. The legislative history makes it clear that Section 326(a) simply fixes the maximum compensation of a trustee. The limits in Section 326(a) together with the limitations found in Section 330 are to be applied as outer limits and not as grants or entitlements to the maximum fees specified. The maximum fee schedule is based on decreasing percentages of increasing amounts. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 327 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 37–38 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. The present statutory limits were increased by the Bankruptcy Amendments Act of 1984 to allow greater recovery for trustees in Chapters 7 and 11 cases because the former fee system had made it difficult to obtain private trustees in Chapter 11 cases. S.Rep. No. 98–65, 98th Cong., 1st Sess. 74 (1983).

■ Exhibit E to the application indicates that the total receipts for the period in question received by the Trustee were in the sum of $302,979.73 thereby establishing the maximum base for calculation of a maximum fee award under Section 326(a). Using the statutory percentages on this total, a maximum fee would be slightly in excess of $9,000.00. The sum of $150.00 on the first $1,000.00 of receipts collected, plus $120.00 on the next $2,000.00 collected and three percent on the amount in excess of $3,000.00 or $299,979.73 × .03 = $8,999.39 for a total maximum Trustee's fee of $9,269.39 based on total receipts collected. By awarding the maximum compensation, however, the Court would be giving the Trustee the benefit in the calculation of the former debtor-in-possession's bank account balances of over $169,599.78 reflected in Exhibit E. It is patently obvious that the services of the Trustee to close out those accounts and reopen them as estate accounts were minimal at best. Allowance of the maximum fee would provide the Trustee with an effective windfall at the expense of estate creditors as that sum exceeds 50 percent of the gross receipts collected. Accordingly, the Court exercises its discretion in light of the objections and employs as the base of calculation those receipts itemized on Schedule E derived from the efforts in the sale of the debtor's real estate, personal property and other items listed thereon totaling $133,379.95. Utilizing the statutory formula described above, the Court finds and concludes that the sum of $4,000.00 is an appropriate fee to award given the nature of the objections filed by the Creditors' Committee which are sustained in part by this opinion.

The Court may award a trustee less than the statutory maximum fee because Section 326(a) sets only a ceiling on the trustee's commissions. *In re Roco Corp.*, 64 B.R. 499, 502 (Bankr.D.R.I.1986). Moreover, the Court finds it inexcusable for a trustee to first apply for fees in an amount approximately four times the allowable statutory maximum, ignore the plain mandate of the statute and then blithely concede such limits exist after the Court raised the issue and objections were filed. If a court determines the trustee has manipulated an estate to inflate his base fee or that the trustee's services were not commensurate with the maximum fee, the court need not award the maximum. *See Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 424 (9th Cir.1983). The inefficiencies complained of by the Creditors' Committee warrant compensation awarded to the Trustee limited by the lesser amount of receipts generated by his efforts and services. The fee awarded hereby for the Trustee's services even slightly exceeds the amount requested by Schlegel for his indi-

vidual services as Trustee which was $3,530.00 for 35.30 hours of time at $100.00 per hour.

## ATTORNEYS' FEES

■■■ The application seeks the total sum of $24,214.00 as attorneys' fees for the Trustee's attorneys less a $5,000.00 allowance received in November, 1986, awarded by the Judge originally assigned this case.[1] The hourly rates sought by the attorneys range from $135.00 per hour to $55.00 per hour for a total time expended in excess of 230 hours for the period covered by the application. The Court finds in accordance with the above precedents that the hourly rates are reasonable but rather that the total time expended for attorneys' services during the period in question was not reasonable but excessive to some extent especially in light of the results obtained and the objections filed. The Creditors' Committee counsel may seek compensation for services rendered incidental to the sale of the estate property and claim that their efforts, not the Trustee's attorneys, produced the results.

■■■ Although the format of the application, and in particular Exhibit B like Exhibits A and C, does not strictly follow the functional setting prescribed by *Continental* and its progeny and the format is tedious to follow, it does specify by date the service performed, time expended and attorney performing the service in substantially complete detail in accord with Bankruptcy Rule 2016(a).

To totally deny compensation, as urged by the Creditors' Committee, under the facts and circumstances of this case as outlined above, would be an abuse of this Court's discretion. There is no argument contained in the objections that the services rendered by the attorneys for the Trustee were not actually performed. Thus, this Court is to consider whether the attorneys' services were necessary, thus warranting the allowance of a reasonable fee out of the estate. In *Matter of Ryan*, 82 B.R. 929

(N.D.Ill.1987), Judge Grady agreed with the majority of courts that attorneys may not recover fees unless their services produced benefits to the estate. *Ryan*, at 931–32.

Review of this application's format, although not in complete accord with the *Continental* guidelines, was not so difficult as to preclude a fair assessment of the services performed as itemized in the sixteen page Exhibit B so as to warrant denial of all compensation. Exhibit B does detail and chronologically summarize the attorneys' time records in a reasonably comprehensive fashion with some "lumping". In accordance with the burden which rests on the applicants, *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985), the Court finds that counsel has obviously expended time which has benefited the estate. Over 70 percent of the real property has been liquidated. Much less time should be required to complete the liquidation of the estate. The *Continental* guidelines as to format should be strictly followed in any future applications. Because the counsel for the Creditors' Committee have yet to seek compensation for their services incidental to the sales of estate property, the Court will allow an additional $12,000.00 in interim fees to the Trustee's attorneys at this time without prejudice to the remaining balance of attorneys' fees sought by this application.

## PARALEGAL COMPENSATION

■■■ Compensation is sought for over 293 hours of time itemized and detailed in Exhibit C to the application for paralegal services at the rate of $45.00 per hour. Similar formatting problems are contained in Exhibit C as with the attorneys' fees requested in Exhibit B. The Court will deny this compensation request in full in light of the objections and because virtually all paralegal time was rendered to perform trustee's duties and not legal services. The time expended and professional services rendered in this case for the period

---

1. This case was originally assigned to Calendar "M" when it was filed in 1985. The Honorable Robert E. Ginsberg was assigned the case on June 9, 1985. Subsequently, the case was reassigned to this Judge on February 2, 1988.

covered by the application performed by paralegals was at a lower and reasonable hourly rate which is expressly contemplated by Section 330. Had the paralegals assisted the attorneys in rendering legal services, allowance thereof would follow the congressionally sanctioned policy which provides for compensation of paraprofessionals in the interests of economy. Paralegals should be compensated as paraprofessionals under Section 330, not reimbursed as overhead expenses. *See, In re Kleman,* 21 B.R. 77, 78 (Bankr.N.D.Ill. 1982) (approving hourly compensation for paralegals). In these times of increasing and sometimes astronomically high hourly rates charged by attorneys, there is a clear need for both economy of effort and utilization of more cost-efficient personnel to do the work required. The purpose is to lower overall costs of administration and thereby increase the available proceeds to serve as dividends to estate creditors. The opposite result from that intended by Congress is obtained when additional paraprofessionals or others are hired to do trustee's work for which limits are established by Section 326(a).

In this case Exhibit C details the fact that the paralegals performed trustee's functions. Page 1 of Exhibit C highlights and summarizes all paralegal services as follows:

Investigation of assets, conduct, liabilities and financial condition of debtor;

Tax and tax-related matters—liaison with account REP preparation of monthly reports;

Administration—payment of real estate taxes, operating expenses, obtain insurance, Trustee's bond, provide information to interested parties and Creditors' Committee, filing and delivery of documents, bookkeeping;

Disposition of personal property; and

Disposition of real estate.

All functions performed by the paralegals in this case, as shown by the application, were trustee's duties and did not involve legal work. To allow such requested compensation, therefore, would subvert the plain and clear limits estab-

lished by Section 326(a) on the Trustee's allowable compensation. The Trustee cannot effectively expand the maximum limits of Section 326(a) by hiring other people to perform his duties for him, whether they are paralegals, attorneys, accountants or other professional persons, and utilize the potentially unlimited scope of Section 330 as a basis for award of reasonable compensation.

In a somewhat analogous situation, debtor's attorneys were not compensated for time spent by law clerks and paralegals at hearings where debtor was also represented by a licensed attorney where the services of the clerks and paralegals were limited to reminding attorneys of agreements and "holding the debtor's hands." *See In re Bonds Lucky Foods, Inc., No. 1,* 76 B.R. 664, 667 (Bankr.E.D.Ark.1986). In the case at bar, this Court denies compensation to paralegals who performed trustee's work, not legal work. To do otherwise would ignore the clear mandate and limits of Section 326(a) through the statutory device of an end run through Section 330 which this Court will not allow. A leading authority has noted that:

[t]he requirement of reasonableness in Section 330 in no way affects the limitations on compensation imposed by Section 326. Only one award for a trustee is contemplated by the Code.

2 *Collier on Bankruptcy* ¶ 330.04[1] at 330–12 (15th Ed.1988).

In addition, attorneys and other professionals are not entitled to compensation for services delegated to them by trustees merely for convenience. If the trustee does make such a delegation, it will be at the expense of the trustee.

*Id.* at 330–21.

The inefficiencies in administration complained of by the Creditors' Committee will not be rewarded in this case by any fee allowance to paralegals to whom the Trustee delegated his duties and work.

### REIMBURSEMENT OF COSTS ADVANCED AND INCURRED

The application seeks a total of $4,307.92 in itemized costs for long dis-

tance and toll telephone charges, photocopying expenses, messenger and witness expenses, costs of obtaining records, document production expenses and LEXIS and Westlaw research fees. Exhibit D attached to the application consisted of 10 pages of itemized disbursements in chronological order which identified each of the daily costs and expenses advanced by the applicants. The Court finds there is sufficient specificity and detail contained therein to satisfy the requirements of Section 330(a)(2). No objection has been raised to most of the expenses.

The objections to this portion of the application focus on the photocopying costs which totaled $1,981.90, and particularly to the applicants' representation that their clients are charged for photocopying costs at the rate $.40 for the first page and $.20 for each page thereafter. At the May 11, 1988, hearing, the Court inquired of the Trustee whether for that expense there was any profit built in to the charge and whether those rates were the applicants' actual costs of photocopying. As no response by way of amended or supplemental application has been received from the applicants, the Court at this time will allow the balance of the expense requested in the sum of $2,326.02 without prejudice to the applicants to again seek reimbursement on the photocopying charges once the actual costs of that expense are determined. Actual costs and expenses reasonably and necessarily incurred are reimbursable and subject to allowance by the Court but not in amounts which include any profit or mark up factor to the applicants. Only actual out of pocket expenses are reimbursable under Section 330(a)(2). *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 834 (Bankr. D.Vt.1987). Although there is a split of authority on the compensability of LEXIS and WESTLAW research time, earlier opinions by other judges of this Court have allowed reimbursement. Therefore, rather than deny same as overhead to be absorbed by the applicants, this Court will follow those earlier opinions. *See In re UNR Industries, Inc.*, 72 B.R. 796, 801–02 (Bankr.N.D.Ill.1987); *In re Wildman* 72 B.R. 700, 731–32 (Bankr.N.D.Ill.1987).

## CONCLUSION

For the foregoing reasons, the Court finds that the application should be allowed in part and denied in part as stated above. The Trustee is hereby allowed the sum of $4,000.00 as trustee's fees. The attorneys for said Trustee are hereby allowed the sum of $12,000.00 for legal services which includes the $5,000.00 allowance previously paid and received as above discussed for a net additional allowance of $7,000.00. Paralegal compensation is hereby denied in full. Costs are hereby allowed to be reimbursed in the sum of $2,326.02.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.